Case 13-5414 Howard Thomas v. Stanton Heidle Oral argument, 15 minutes per side. Mr. Stovall for the appellant. Good morning, your honors. I'd like to reserve 6 minutes for rebuttal. May it please the court, my name is James Stovall and I represent Howard Walter Thomas. The Supreme Court has held that evidence offered by a criminal defendant may not be excluded based on a state rule of evidence if applying that rule to the specific evidence at issue would be arbitrary or disproportionate to the rule's purpose. Exclusions based on a per se rule are especially suspect. Here, the state court excluded defense evidence based on a per se rule that, as applied to the particular testimony at issue, was arbitrary and disproportionate. The exclusion here was arbitrary for two primary reasons. First, the purposes for the rule that the state court applied were not served by excluding Dr. Loftus' testimony in its entirety. The state court applied the rule that Tennessee adopted in State v. Coley prohibiting any expert testimony on eyewitness identification. The Coley per se rule had essentially two purposes. Coley did not want experts telling jurors something they already know and it did not want experts telling jurors whether or not another witness was truthful. Neither of those purposes was served here. Dr. Loftus explained in her proffer at a pretrial hearing that her testimony would discuss scientific findings about memory that are not matters of common knowledge, are not understood by jurors, and in fact contradict what many jurors think about how eyewitness memory works. The state did not challenge that proffer. It did not then, and it does not today, assert that any aspect of Dr. Loftus' testimony was merely a matter of common knowledge. And it certainly didn't show that every aspect of her testimony would have been a matter of common knowledge. But Dr. Loftus' testimony was excluded entirely. This sounds kind of like a, I mean, what the Tennessee court was doing was applying a per se exclusionary rule based on some general observations about the nature of expert testimony with regard to eyewitness identification. Your argument seems more like an argument based on the facts of this particular case. Well, my argument, Your Honor, is that the Court of Criminal Appeals, contrary to Supreme Court precedent, applied a per se rule without considering the specific facts in this case. The Chambers, Crane, and Rock line of Supreme Court cases hold that you can only exclude based on a per se rule if the purposes for that rule would be served by excluding the particular evidence at issue. So that's why I think Your Honor is exactly right. What the state court did here was just apply a per se rule. Their determination had nothing to do with the specific testimony Dr. Loftus would have given. The problem is the proffer that was uncontested by the state, her proffer made clear that the purposes for the per se rule that the state court applied, those purposes were not implicated. Another way you could characterize it, though, would be to say that this particular case points up why a per se rule might be a bad idea, but not necessarily the federal constitutional implications. You know, I don't know, we're sort of going around and around because it's possible to do that in these cases. But clearly the Tennessee court, although the trend might be otherwise now, was not the only court who thought the interest in not having experts try to tell jurors about the reliability of eyewitness identification, it certainly wasn't the only court to have thought of doing that at some point in time. Well, Your Honor... And every case to that extent implicates the broader concerns. The broader concerns do come up in many cases, but what is unusual about this case is the fact that it was a per se rule that the state court applied. Now this case does not, this court does not... When Paul counseled Mr. Stovall, was the district court confronted with the argument that you make today that the purposes were not served? The district court, the court below... The application of the per se rule was inappropriate because it failed to, the court failed to work further to decide whether or not the purposes were served. We did raise a Holmes and Rock, we did challenge the application of the per se rule in the district court. At what stage? I thought you meant in the district court below. I do. In our habeas petition. Yeah, okay. And we raised this Holmes Chamber's argument on direct appeal back in the state proceedings as well. So there's no issue here, the state has not raised any issue here that this argument has not been preserved, that this challenge hasn't been preserved. The state has raised the argument that it's much ado because it's harmless error anyway in light of the other significant testimony with respect to who committed the crime. So maybe you can address that. I will address that, Judge Cook. First, the state has waived that argument. No, you say the state has waived it. Why don't you pursue that a little deeper? So this court has held that, and other circuits as well, that if the state doesn't raise a harmless error argument in its response to the petition in district court in the proceedings below, it has waived that issue, it's waived that argument. How specific does it have to be? Because they included in kind of their final paragraph, they included some language to the impact that there was overwhelming evidence that irrespective of the argument on her testimony, they did raise that thing, although it obviously wasn't a very clear raising of the harmless error. It's got to be more than that. They did have a passing perfunctory reference to other evidence, no legal authority, and the words harmless error don't even apply. I mean, the impact is the same. But what they didn't do, Your Honor, was analyze how the exclusion of Loftus' testimony didn't contribute to the verdict, how the exclusion of Dr. Loftus' testimony didn't influence the way the jury would have perceived. But isn't that against the backdrop where the identification was the whole core of the trial, and the defense attorney seemingly did a good job of cross-examining the identifying witnesses on the 10-year length of time, whether she was anxious at the time she made the identification, the hair color, the length of the hair. The identification was pretty much at the core of the whole trial, wasn't it? It was, Your Honor. The identification was at the core of the trial. She was the most powerful witness the state presented, and the problem is, as this court has recognized... She's like the only witness that the state could present, except for the bloodstains on the clothing, which is all inculpatory. Well, they didn't have any forensic evidence. They did have other witnesses. They had the other witnesses, the grandmother washing bloody clothes the day after the killing. That was the claim of those witnesses, the evidence itself. There was no physical or objective evidence, and the testimony from the Salyer relatives had its problems. But notwithstanding that, Ms. Cook's eyewitness testimony was the most powerful, and as this court has recognized, cross-examination. Cross-examination is no substitute for the scientific findings that Dr. Loftus would have provided. And I think, Your Honor, my time has expired, but if I could... If there are no other questions, you'll have your rebuttal time. I don't think there's anything else at this point. May it please the court. John Bloodsoe on behalf of the respondent. As the court has indicated through its questioning, as counsel has pointed out, the issue presented in the state court, the constitutional issue, is whether or not the testimony of Dr. Loftus, as we have from the proffer,  And I think this informs the harmless error argument. To paint the picture, the primary issue litigated in state court prior to trial and in the direct appeal was whether or not the Coley rule applied. Coley itself, by its very terms, only applied to generalized, unparticularized expert testimony concerning eyewitness testimony. And the disputed issue was, was this generalized information or was it specific to the case because the expert had reviewed records from the case. Now the state court decided no, this was both on direct appeal and the trial court. No, this was generalized information about the reliability of an eyewitness identification. The proffer aligns with that. Yes. There's no dispute about that. So to clarify, specialized would be the witness would take, say, just for an example, medical records or something about the particular identifying witness and testify about the likely reliability of that witness's testimony based on these extraneous factors. Actually, Your Honor. I mean it wouldn't be, it probably wouldn't be that direct because that sounds a little bit too much like whether you're saying the witness is truthful or not. But say what tendency a particular medical condition might have to influence an individual's memory. Your Honor. Or particular medications or whatever it is. Your Honor, that's what we had. And what the state courts determined is that was generalized information about memory. The key thing there is this expert never met Ms. Cook. Her information was, and also this is the most... What would be specialized? I'm sorry, Your Honor. What would be specialized? I think it would be based upon two responses to that. First of all, someone who actually met that individual and could speak to that individual's reliability. Dr. Loftus was very clear. She would never be in... That sounds more questionable than generalized expert testimony. Well, Your Honor, what we have from Dr. Loftus... It sounds like it's veering into some other category, but perhaps I'm getting too focused on that. Well, that was consideration of a state law issue that the state courts resolved construing the Coley Rule. I think at this point the question becomes whether that rule was arbitrary and disproportionate. You're absolutely right. I don't mean to suggest otherwise. Yes, Your Honor, I understand. I think I understand. Each of these cases and each of these claims are going to rise and fall upon the interests that support that particular rule of exclusion. And this case is actually... Is it a general rule as to, in general terms, whether the rule has a sufficient interest or is it in this specific case? I think the standard is a general rule because there only has to be a valid reason, reasonable and legitimate interest to support the rule. What we have here, particularly at that time, is you had different jurisdictions. This was an open question. And you had different jurisdictions weighing in different ways. I submit that doesn't render the rule arbitrary or disproportionate because the court came down one way. And that doesn't change because the court later came down a different way. You have to look to Coley itself. What were the reasons given for the rule? And the court said the reason for the rule at that time is that this type of testimony would be unhelpful. It will not aid the jury. It provides minimal probative value that outweighs the danger of prejudice. And it invades the province of the jury in creation. Was the court... Mr. Stovall's argument is that there was no serious examination of whether or not the application of the rule as a cross-the-board rule really supported the purposes behind the rule. That was the rationale given by the court. The court also focused on... Because this was not announced... This was construing a state rule of evidence in a particular type of expert testimony. The court looked to the differing language from the federal world. Under the state rule, it has to substantially assist the trier of fact. I think the rationale given... The rationale given doesn't have to be that specific and it doesn't require that level of explanation. The fact that you have a per se rule doesn't answer the question. The hearsay rule is a per se rule. You look to the rationale given by the court at that time. That rationale was legitimate and was reasonable. The court changed its mind... Wasn't the rationale that it would be invading the province of the jury? Yes. In this case, though, is that what the testimony would have been offered for? Or wouldn't it have been offered to give a larger context to help the jury decide whether they should be quite so assured with her testimony? Your Honor, what would have been offered would have been her testimony about factors that are often present when there has been a false or inaccurate identification. The prosecutor in this case made a great deal of argument that the anxiety or the terror that she necessarily had at the time of the killing made her identification more trustworthy. Her testimony would have been just the opposite, wouldn't it? It would have been that that makes the identification less trustworthy. It would have noted that that is a factor that has been present in cases of a false identification. So if the state's real goal is not to have the expert invade the province of the jury, how would her testimony have invaded that? Your Honor, I hope I'm being responsive to Your Honor's question. It's just when looking to the arbitrariness or disproportionality of the rule, you don't have to meet that in every fact pattern in every case. There may be legitimate reasons to admit this proof, and every interest supporting the rule may not be present in a given case. But that doesn't mean you're going to have a rare circumstance where the operation of the rule violates your process. So you're saying you make that judgment on general terms, not on the specific facts of an individual case? I think the appropriate standard is on general terms. Could you speak a little bit about this waiver issue with regard to the harmless error? Yes, Your Honor, and I think what's important here is to note how this claim was litigated before it got to federal court. The chamber's claim was not raised until the filing of the reply brief in the direct appeal in the Court of Criminal Appeals. The claim that was litigated in the trial court, the claim that was addressed in the state's brief on direct appeal, was whether or not this did or did not fit under COLE. And our argument at that time, which was consistent in the trial court, is that it does not fit under COLE. But even if it were somehow improperly admitted, it was harmless error. In response to that, the defendant raised for the first time the chamber's issue. Now, it would have been subject to waiver under state law and not a merits consideration, but the court didn't actually apply the waiver rule. So they reached a merits conclusion. So we've not argued procedural default for that reason. It was then raised in post-conviction, and the big dispute there in state court was whether or not it was previously determined, based on the fact that the law changed under Copeland, the court concluded that the constitutional issue was already resolved. We get to federal court, and our position in federal court is, as is often in a habeas corpus case, is look to how the state court resolved that claim. Did they reach a decision that's contrary to or an unreasonable application of clearly established federal law? That was our position and our answer in the district court. My point is, we didn't raise harmless error because it wasn't harmless error, and looking to the rationale given by the state court, it was not an unreasonable application of chambers. You mean it wasn't harmless or it wasn't error? It wasn't. It wasn't error. I mean, had we raised the point, it would be an alternative argument. So what's your argument about whether if we should disagree with you on the merits, it would be harmless error? Have you weighed that? That's what I think Judge Gwynne is asking you to address. And, Your Honor, my response to that is I don't believe... I mean, this court noted in Frenesic it still had to address on its own harmless error. Now, counsel has noted in the reply brief, well, that the case indicates that harmless error had... I'm sorry, correct error. Is that a man to a concession, that you've weighed it, or did you assert it through just looking even kind of cursorily at the evidence in your brief, other than the testimony of Mrs. Cook that supported the issue of guilt or the identity issue? Your Honor, our position, once we got to federal court, is you look to whether under the AEDPA standard of review, and we were and still believe absolutely there was no error. Now, we included facts about the case in that argument, and that would also inform a harmless error argument, but my point is it's not appropriate to deem an issue waived when it would be an alternative argument. We were not conceding error and making a harmless error under the Brecht standard. Look, if I'm understanding this, your position is it's not error, therefore you saw no need to talk about harmless error to any great degree. But if the court found, disagreed with you on the merits, then we would still go through the appropriate analysis. The court would not be constrained. It would not be disallowed. And we would do that, not because we're required to do so, presumably, but we would do that in the exercise of our discretion. Ultimately, it makes a lot of sense to do that because what interest do the federal courts have in needlessly prolonging federal habeas proceedings when there's an issue that's determinative perhaps it should be reached? I think that is accurate, Your Honor. I don't disagree with that characterization. But the standard's pretty high. It is. It's the Brecht standard. You essentially have to show  in determining the jury's verdict. It would have played no role. And under the facts of this case, it wouldn't. The evidence of his guilt, of his identification is overwhelming. He confessed to the offense to Ernest Salyer. He confessed to the offense to Loretta Strange. There have been challenges to their credibility that they were all part of this one family that their testimony shouldn't have been believed. You also have the testimony of Sandy Buckner. She worked in the convenience store. There's no proof that she was in any way connected to these individuals. She testified that two days after the offense, she saw the defendant immediately after this offense occurred. We can piece that together through the timeline. Two days later she saw him. He looked very different. He had changed his appearance. And he was very concerned that he would be implicated in this case. And her response to that was, well, I don't understand why you're concerned. I was with you and you were nowhere near where this offense occurred. Well, it took nine years before he was identified, before they determined the offense occurred at a different intersection than where they originally thought it had occurred, which was close to where he was. Did she give testimony that he had blood on him in the morning after the killing? I don't recall if she testified that he did or didn't. I don't recall if that was... Who was the witness who saw him within hours after the killing? It would have been her. She was working overnight in a convenience store and he came in and then he asked her to give him a ride home and that was around 5 or 5.15 a.m. So that would have been after this offense because this offense was earlier in the morning, overnight. Unless the court has further questions, I see my time is nearing out, but I hope that explains why we did not specifically assert the harmless error because it would have been an alternative argument and under the appropriate standard of review, the rule as applied here was not arbitrary and disproportionate. Unless the court has further questions, we ask the court to affirm the judgment of the district court. Thank you, Your Honors. I want to ask a big picture question, Mr. Stovall, and I know your time is precious to you, so if you can't give me a quick answer, forget it, alright? Alright. Big picture. When you think about rules like this per se evidentiary rule, I would view this as a former trial judge in the context of everything that happens at trial. In the federal courts, it's typical to give a jury instruction that, to some degree at least, calls into question the reliability of eyewitness identification and that probably gets a defendant as much, if not more, than the defendant could hope to get out of an expert on eyewitness identification. So I would think that any concerns about the ultimate harm to the defendant would be much alleviated by the whole context of such an instruction. Do you know, was such an instruction given in this case? Tennessee has, I believe, a pared down version. Tennessee does have a sort of modified TAIL FAIR instruction that was given, but that instruction did not even purport to discuss scientific findings regarding memory that Loftus would have explained. Some state courts have incorporated the science. New Jersey, after a lengthy proceeding, has adopted jury instructions that do talk about the science, but Tennessee's instruction here did not. A few points. First, the issue for this court is not the rule itself, but the rule as applied here. And that is clear from the Supreme Court's cases. In Chambers, the per se rule at issue was the hearsay rule. The Supreme Court didn't find there was anything wrong with that rule as a general matter. The problem was how it was applied to the particular out-of-court statements. In Rock, the per se rule had to do with hypnotically refreshed testimony. The Supreme Court evaluated it based on the particular refreshed testimony at issue. So the state is incorrect that the analysis is was the rule justified back in 2000? The question is how it was applied, and they haven't even tried to argue that the purposes were served here and the purposes were not served here. When you say as applied here, you're still back to focusing on the purposes not being served. That's right. I mean, it's a witness who didn't testify, so as applied here, you take that to be important in what way? I mean that the question under Chambers and Rock is, did the exclusion serve the purpose? The purpose of the rule, right. That's all you're saying. That's what I mean by as applied. And we have testimony. There was a pretrial hearing so we have a good sense of what her testimony would have been and what it would have addressed. And it would not have been a matter of common knowledge and it would not have invaded the jury's province. Now on the question of cross-examination, and I think that is relevant both to whether it was important to the defense and also relevant to the harmless error question. I think the state's conceded that it waived harmless error but if this court decides to address it to Esponte the cross-examination is certainly part of that. This court and the Tennessee Supreme Court itself has found that cross is no substitute. And I think there are two reasons that make it clear why cross doesn't do it. First, although cross-examination can get into the existence of the factors that affect memory, cross of the witness cannot explain the significance or the import of those factors. To some degree caught between a rock and a hard place in this regard. The expert seemed like she was very cautious not to be giving an opinion as to whether the identification was correct or not correct. So her testimony sounded like it was going to be limited to the overall overarching don't always trust identifications because they sometimes are wrong. Because she was so generalized in what she was going to testify to isn't it harder to make the argument that in this particular case that the cross-examination didn't largely serve the same purpose? I don't think it is harder, your honor, for these reasons. First of all, her testimony that the expert's testimony would have been as particularized as it could ever appropriately be as Judge Gibbons pointed out. No court would ever allow another witness to say she was lying. But this was not just generalized. Her testimony related to seven different factors present in this very case. Take two, weapon focus and confidence. The prosecution argued that because this was so violent, it made it more likely she would remember. The cross-examination touched on the fact that her attention was distracted. But if the jury, as it probably did, believed that violence and the weapon made that more memorable, the cross only reinforced that. If they had the scientific perspective provided by Dr. Loftus, they could have reached a different conclusion. Same with confidence. Many people think that confidence is a reliable indicator of accuracy. How long was the jury out in this case? Not long at all. Does that say something about whether her testimony would have made any difference? I don't know if it does or not, but what I do know, your honor, is that the prosecution, as your honor has already pointed out, relied on the very misconceptions that Dr. Loftus could have corrected. Thank you. We appreciate the argument that both of you have given and we'll consider the case carefully. Mr. Stovall, we note that you're appointed under the Criminal Justice Act and we appreciate very much your having accepted the appointment of Mr. Thomas and your very effective and skilled advocacy on his behalf. Thank you very much.